## State Bank of Collinsville, Appellant, v. Clarence B. Long, Trustee, et al., Appellees.

Opinion filed December 26, 1933.

WARNOCK, WILLIAMSON & BURROUGHS, for appellant.

D. H. MUDGE, for appellees.

MR. JUSTICE STONE delivered the opinion of the court.

This is an appeal by the State Bank of Collinsville objecting to a decree of the circuit court of Madison county, authorizing foreclosure of a trust deed of the Arctic Ice and Fuel Company at the suit of the trustee therein. The objection made is in substance that no consideration was given for the bonds secured by the trust deed, at the time of their issue, and that the foreclosure is substantially for the interest of those who originally received the bonds without consideration.

Appellant's standing to make this attack is the position of judgment creditor holding a sheriff's certificate of purchase for the property concerned based on execution sale on its judgment, and asking by cross-bill that its certificate of purchase be declared a lien prior to the lien of the trust deed.

Arctic Ice and Fuel Company was organized in 1911. It acquired the real property, merchandise, equipment, accounts, books and business of two other companies, one engaged in wholesale ice and storage refrigeration business, with a substantial factory and storehouse, and the other carrying on a retail ice, coal and feed

business. The persons interested in the new company were the same persons who were owners of the two separate companies which were prior owners of the property. In form the transaction was a sale to Arctic Ice and Fuel Company of the property of each of the other companies for an aggregate sum of $100,000, one-half of that amount paid in stock, and the other half in promissory notes. Bonds in the total amount of $50,000 were substituted for the note obligation. These bonds were secured by trust deed dated February 1, 1911. All but $12,000 of the bonds were delivered to the holders of stock in the Arctic Company, in amounts proportioned to their stock holdings, and in proportion to their ownership interest in the property conveyed to the Arctic Company. The value of the property so conveyed was appraised by three of the persons interested in the prior companies, at $100,000.

This operation produced a situation in which the Arctic Ice and Fuel Company appeared to those dealing with it to be a corporation with $50,000 of capital stock paid in, owning property which was accepted as security for a mortgage loan of $50,000. In fact, the same persons who were owners of the stock had a prior lien on the property of the corporation to the extent of $38,000. This identity of the debtor stockholder with the creditor bondholder at the inception of the Arctic Company would be susceptible to unfair use against general creditors not advised of the controlling facts. It is also true that if the bondholders were not the stockholders in control, the same condition of assets and debts would arouse no question. While it is further true that even when bondholders and stockholders were the same persons, the value of the property conveyed might be large enough to make the transaction a very favorable one to the corporation, the fact that the same persons are both creditors

and stockholders in complete charge of the transaction on both sides of it arouses the mind to scrutiny.

Upon this branch of the case, the question of value of the property and business conveyed to the Arctic Company, there is contradictory evidence, none of it completely satisfying, the most definite being that of one of the persons interested in the prior ownership of the ice factory, and tending to establish a value of $84,000 for the property of that company at the beginning of 1911. The retail company had property apparently worth $10,000 or more. Both companies appeared to be established in favorable trade situations, and the combined business of wholesale and retail might well have possessed a value greater than the total of their separate values.

The master in chancery finds definitely that the property conveyed to the Arctic Company had a value of $100,000 at the time it was conveyed, and the chancellor has approved that finding. We do not believe this record justifies us in reversing that finding.

The status of appellant itself with relation to its prayer that the bond issue be declared subordinate to the judgment obtained by appellant requires examination.

The organizers of the Arctic Company were advised concerning the plan of organization by counsel then interested in the appellant bank, who may have been at that time a director of the appellant bank, though this is not certain. It is certain that appellant was advised of the bond issue and the plan of organization. One of the companies owning property which was conveyed to the Arctic Company was in debt to appellant bank in the amount of $12,000 in January, 1911. Appellant bank took the $12,000 in bonds which was not distributed to Arctic stockholders, as security for that debt. As early as July, 1911, appellant bank accepted the note of the Arctic Company as a renewal of the

previous obligation and accepted the Arctic Company as its debtor. This $12,000 obligation was paid in full, and the master and court find that these bonds amounting to $12,000 were thus retired. Appellant bank handled for collection during the years after 1911, other bonds of the issue concerned which had been sold to persons not connected with the Arctic Company. It made no objection to the validity of the bonds with knowledge of their existence, and dealt with the bonds from February, 1911, onward for a period of more than 15 years, in such fashion that no implication except that appellant bank consented to the bond issue seems open. Probably about the year 1927 or 1928, the same person who had advised the Arctic Company as counsel with respect to the bond issue being then president of appellant bank, the bank made the loan on which the judgment supporting the certificate of sale now held by the bank, was made to the Arctic Company. Judgment against the Arctic Company was taken by appellant bank at the October Term, 1930, and this attack upon the bond issue is made in November, 1931. During more than 20 years the bonds of this issue have had some general sale to persons not connected with the Arctic Company. Some of the bonds have been paid, there being now $31,500 outstanding. Some are in the hands of purchasers for value with no notice of objection to them. Some were sold to innocent purchasers for value and again sold by such purchasers to the original stockholders.

In this state of case it seems that the trial court and master were correct in holding that this suit to foreclose a trust deed is not controlled by such cases as *Sprague v. National Bank of America*, 172 Ill. 149, deciding that a creditor aware of an issue of bonds to stockholders outstanding at the time he gave credit to the corporation was not barred from maintaining a creditor's bill to enforce payment of the stock-

holder's unpaid subscription. The present suit is not one to enforce stockholders' liability for unpaid balances on subscriptions to stock and the relief sought by appellant would not work out to an enforcement of such liability. If a stockholder was liable for $500 of unpaid subscription, but now holds by purchase $5,000 in bonds, it is not a stockholder's liability or its equivalent which would be imposed on him by depriving him of all rights under the terms of the bonds he holds.

Furthermore the evidence indicates more than awareness on the part of appellant bank during a period greater than 20 years. It fairly indicates consent. In *Higgins v. Lansingh,* 154 Ill. 301, a case voluminously argued and thoroughly considered, our Supreme Court takes the view that an assenting creditor is not in position to deny the validity of corporate obligations in this state of case. The language runs, page 331:

"But counsel insist that the corporation was defrauded; that Benson, Blaney and Sherman, being a majority of the board of managers, voted the issue of the capital stock and scrip to themselves without paying the company anything for it and in fraud of the rights of the company and that such stock and scrip are therefore void. The evidence shows that no deception was practiced on anyone. There was no concealment; no pretense of any payment to the company otherwise than by what was called Benson's equity in the land; no pretense that the company had any other capital. No one was beguiled into becoming a subscriber to the capital stock or a creditor of the company, on the supposition that Benson paid anything more than he actually did pay. What was done was done openly, and, so far as the evidence discloses, honestly. The company obtained through Benson all the capital it had, and gave no more in return than it re-

ceived. Had there been at the time other stockholders who had paid for their stock or creditors who had been injured by the transaction and *not consenting thereto,* then, as to them, counsel's argument would be unanswerable."

Whatever might be the liability of individual holders of bonds secured by the trust deed foreclosure, in a suit to enforce a stockholder's liability against them, we do not find error in the refusal of the court below to sustain the cross-bill of appellant bank.

The decree of the circuit court of Madison county is affirmed.

*Decree affirmed.*